UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARY ANN NYE-RICHARDSON,<br><br>               Plaintiff,<br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security Administration,<br><br>               Defendant. | CASE NO. C08-5598RJB<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for June 12, 2009 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying her application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. This matter has been briefed, oral argument was heard on May 19, 2009, and after reviewing the record, the undersigned recommends that the Court remand the matter to the administration for further consideration.

REPORT AND RECOMMENDATION - 1

# INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Mary Ann Nye-Richardson, was born in 1956. She attended college for three years, and she has worked in the past as a registered nurse and nurse supervisor (Tr. 34, 99).

Plaintiff alleges that her disability began in March 2002 (Tr. 84). In April 2007 Dr. Meagher evaluated Plaintiff's mental health. He concisely summarized Plaintiff's medical history as follows:

> Ms. Richardson reported that her ongoing difficulties with cervical, lumbar, extremity and headache pain as well as subsequent depressive symptoms resulted from two work related injuries the first of which occurred in January of 1994. Ms. Richardson was working as a nurse at a hospital ICU ward when she had occasion to be grabbed around the neck by a 500 pound patient who was evidently quite agitated. Ms. Richardson extricated herself and crawled away with notable pain in the upper aspect of her spine. She sought some conservative treatment and continued working as pain symptoms persisted. Eventual neurodiagnostic evaluation indicated a cervical disc herniation which was treated with a fusion from which the patient recovered quite effectively. She was able to go back to a lighter duty nursing job within 6 weeks of the surgery, and eventually she returned to hospital floor nursing. Unfortunately within that work context, she had occasion to have another industrial injury involving lifting a patient which resulted in compromising her cervical fusion as well as resulting in lumbar strain and a compression fracture in November of 2001. Ms. Richardson again tried to continue working and did so for nearly 3 months before escalating pain symptoms precluded normal functioning. Further evaluation indicated that the fusion had failed from the second injury and another surgery ensued which added hardware in early 2003. Her recovery from that procedure has been marginal in spite of considerable conservative treatment, and she has not been able to return to any productive functioning. She has also become quite reliant on multiple medications including opiate analgesics, and this has become a concern to both her providers and herself. As you probably know, treatment included a trial at a multidisciplinary pain clinic last year but that evidently failed after one week due to its focus on work hardening. A more recent IME evidently suggested a need for some further behavioral treatment measures especially in the context of depressive symptoms. That recommendation along with your concern regarding her medication dependency has prompted the present evaluation.
>
> Ongoing pain symptoms include the cervical and lumbar region, periodic parasthesia in all limbs, and occipital headache that occurs on a near daily basis. Pain symptoms are aggravated by most any activity as well as being in any one position too long. Current treatment is limited to the medications and there was the last in a series of epidural injections some 2 weeks ago. The patient also tries

> to cope with the pain on her own through distraction, relaxation, hot showers, rocking, or crying.

Tr. 608-609.

Plaintiff filed her application for disability benefits on January 3, 2003, and as noted above alleged disability since March 2002, specifically March 19, 2002. Ms. Richardson claims her "neck and back injury requires medication for pain, muscle relaxers and rest, subsequent nausea vomiting issues, surgery needed." Tr. 98. Plaintiff's applications were denied at the initial administrative levels. On January 13, 2006, an administrative hearing took place in Olympia, Washington before an administrative law judge ("ALJ"). The ALJ heard testimony from Plaintiff, Dr. Douglas Smith (a medical expert), and Paul Prachyl (a vocational expert). Tr. 617-82.

On September 29, 2006, the ALJ issued a partially favorable decision applying the five-step sequential evaluation process. Tr. 27-36. 20 C.F.R. §§ 404.1520. The ALJ determined that Plaintiff was disabled and entitled to benefits from March 2002 through February 1, 2004. Tr. 33. However, the ALJ also found that after February 1, 2004, Plaintiff retained the residual functional capacity to perform sedentary work and some light work. *Id*. Specifically, the ALJ found the record showed significant medical improvement and relying upon vocational expert testimony, the ALJ found that an individual with Plaintiff's age, education, work history, and residual functional capacity could perform jobs existing in significant numbers in the national economy, such as an office helper, telephone solicitor, and microfilm document preparer. Tr. 34, 679-80.

Plaintiff alleges the ALJ erred in not finding her entitled to benefits beyond February 2004. In her Opening Brief, Plaintiff argues the ALJ made the following errors:

REPORT AND RECOMMENDATION - 3

(1) at step-two the ALJ failed to find Plaintiff's diagnosed depression was a "severe" impairment;

(2) the ALJ failed to find any mental or physical functional limitations despite finding Plaintiff suffered from a chronic pain syndrome impairment at step-two;

(3) the ALJ failed to properly assess Plaintiff's residual functional capacity;

(4) the ALJ failed to properly assess and consider the opinions and reports from Dr. Phillips and Dr. Kaffl; and

(5) the ALJ failed to properly consider the lay witness evidence.

In her Reply Brief, Plaintiff focuses the court's attention to only three issues (the ALJ's step-five analysis, the ALJ's consideration of the medical evidence related to Plaintiff' s mental impairments, and the ALJ's consideration of the lay witness testimony). Defendant opposes Plaintiff's allegations, and asserts that the denial of Plaintiff's application for benefits is properly supported by substantial evidence and free of any legal error. Defendant asks the court to affirm the administrative decision.

Significantly, at oral argument, Defendant conceded the ALJ failed to review all of the relevant medical evidence. Defendant further agreed that the matter should be remanded for further proceedings, but not for an outright reward of social security benefits as argued by Plaintiff. After reviewing the matter, the Court recommends that the District Court should remand the matter to the administration for further consideration.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214 (9th Cir.

2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir.2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (*internal citations omitted*). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

# DISCUSSION

## A. *The ALJ Failed To Properly Evaluate Plaintiff's "Severe" Impairments And The Medical Evidence*

The ALJ failed to properly consider the medical evidence and consequently, Plaintiff's residual functional capacity is not supported by substantial evidence. Specifically, the undersigned accepts Respondent's concession at oral argument, and the court finds the ALJ erred when he failed to properly consider the opinions of Dr. Kaffl and Dr. Phillips.

In addition, the court finds the ALJ erred in his evaluation of Plaintiff's mental impairments. The ALJ's decision is internally inconsistent. For instance, at step two, the ALJ found Plaintiff did not have any "severe" mental health impairment. Tr. 30-31. However, in the context of finding Plaintiff retained the ability to do certain type of work, the ALJ found Plaintiff suffered from chronic pain syndrome. Tr. 35. Furthermore, the ALJ noted Plaintiff's nonexertional or mental limitations, finding that these limitations diminished her ability to perform a full range of sedentary work. Tr. 34.

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). The step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007). A finding that a claimant is severe at step-two only raises a prima facie case of a disability. Id. *See also* Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir.1999).

An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not

REPORT AND RECOMMENDATION - 6

severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85- 28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(adopting SSR 85-28).

As noted above, it is unclear whether the ALJ found a mental impairment at step-two. It is unclear whether or not the ALJ considered Plaintiff's chronic pain disorder a severe impairment at step-two. The Social Security Regulations set forth a specific procedure for evaluating mental impairments. First, the ALJ must determine whether a mental impairment exists by carefully reviewing the evidence. 20 C.F.R. § 404.1508, 404.1528, 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00B. Once it is determined that a mental impairment exists, the ALJ must rate the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2). In Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000), the Ninth Circuit held that an ALJ's failure to properly evaluate the severity of the claimant's alleged mental impairment under 20 C.F.R. § 404.1520a, requires reversal where the claimant has a "colorable claim of a mental impairment." Id. The regulations require the ALJ to include specific findings as to the degree of limitation in activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation: "when we evaluate the severity of mental impairment for adults . . . we must follow a special technique at each level in the administrative review process." 20 C.F.R. § 404.1520a(a) (emphasis added). The regulations require that the

REPORT AND RECOMMENDATION - 7

ALJ rate the degree of functional limitation in the four areas described above. 20 C.F.R. § 416.920a(c).

After reviewing the record, this court finds the ALJ failed to properly consider the medical evidence. Respondent conceded this error at oral argument. As noted above, the ALJ found nonexertional limitations presumably related to her chronic pain syndrome. Although the ALJ found that these nonexertional limitations did not significantly erode the number of available sedentary jobs; it is impossible to assess the legitimacy of the ALJ's decision because he has failed to include a specific finding as to the degree of limitation in each of the four functional areas.

Also problematic is the fact that the ALJ has not discussed the chronology of the mental impairments. For example, the ALJ states his that assessment of Plaintiff's mental health and conclusion that she does not suffer from any severe impairment is supported by state agency medical consultants with Disability Determination Services (DDS). Tr. 31. The problem is the DDS evaluation was performed in July of 2005. The ALJ does not specifically assess Plaintiff's mental health in the context of his finding of disability before February 1, 2004, or after that period. Evidence in the record, including the evaluations of Drs. Werschkul, Phillips, and Meagher, appears to support the contention that Plaintiff's mental health has progressively worsened over time. The court notes several opinions were produced or incorporated into the administrative record after the administrative hearing or the ALJ's decision, and thus, the ALJ did not have an opportunity to consider the evidence when his decision was made. Remand to the administration is appropriate for consideration of these records, in addition to any further evidence that is relevant to Plaintiff's claim of disability.

In sum, the ALJ's failure to properly address the opinions of Drs. Kaffl and Phillips, the ALJ's inconsistent decision with regard to Plaintiff's mental or nonexertional limitations, and the ALJ's failure to specifically assess the degree of limitation in activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation, related to Plaintiff's mental impairments, requires the court to remand the matter to the administration to reconsider the medical evidence.

## B. *The ALJ Failed To Meet His Burden*

Plaintiff argues the ALJ did not meet his burden of production at step-five by citation to the medical-vocational guidelines or by citation to the specific jobs of microfilm document preparer; office helper and telephone solicitor. This argument is first based on the argument that the ALJ failed to properly assess Plaintiff's residual functional capacity.

The Social Security Regulations establish a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir.2002). This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education. To assist in the step-five determination, the Social Security Administration established the Medical-Vocational Guidelines (the grids), which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." Id. at 462. When the grids

do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, *see* Soc. Sec. Ruling 83-14, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577 (9th Cir.1988).

Because the ALJ in this matter found Plaintiff disabled, but also found the medical condition had improved to the point that the ALJ concluded Plaintiff was not disabled since February 2004, the court will note that the medical improvement standard requires the government, in all relevant respects, to prove that the claimant is no longer disabled. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002), *citing* 42 U.S.C. § 423(f); Griego v. Sullivan, 940 F.2d 942, 943-44 (5th Cir. 1991). The Fifth Circuit further explained that the "medical improvement" standard is not limited to only termination cases – where the government is seeking to halt the ongoing payment of benefits. Id. at 719.

After finding disability, the burden was on the ALJ to prove Plaintiff was no longer disabled beyond February 2004. The ALJ found that after February 1, 2004, Plaintiff retained the residual functional capacity to perform sedentary work and some light work. Tr. 33. The ALJ concluded Plaintiff was a "younger individual age 45-49." Tr. 34, 36. The ALJ noted Plaintiff's nonexertional or mental limitations, but nonetheless stated Rule 201.21 of the grids would dictate a finding of non-disability. The ALJ found application of Rule 201.21 consistent with the conclusions of the vocational expert, who at the hearing testified that a hypothetical individual as posed by the ALJ would be capable of workings as a microfilm document preparer, office helper, or telephone solicitor. *Id*.

After reviewing the matter, the undersigned finds the ALJ failed to meet the burden of proving either Plaintiff retained the ability to perform certain jobs post February 1, 2004, or Plaintiff's medical condition had significantly improved as of February 1, 2004.

The ALJ's findings are based on his assessment of Plaintiff's residual functional capacity, which (as discussed above) may have failed to properly take into account Plaintiff's mental impairments.

There is also an argument that the ALJ offered inconsistent assessments and the court should remand the matter to resolve the dispute. Specifically, in his narrative discussion of the evidence, the ALJ found that Plaintiff could: lift up to 10 pounds occasionally and less than 10 pounds frequently; sit up to six hours per day; and stand and/or walk intermittently up to six hours per day; occasionally climb ramps or stairs, but never any ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. *Id*. In contrast, the ALJ's findings state Plaintiff retained the ability to stand and/or walk for only four hours in an eight-hour workday. Tr. 35. It clearly appears the ALJ intended to adopt the latter finding, because his hypothetical question posed to the vocational expert asked him to assume an individual with the following: "Lift and carry 10/less than 10, stand and walk four out of eight, sit six out of eight, occasional stairs, no ropes, ladders or scaffolds, occasional balance, stoop, kneel, crouch, crawl, no heights or hazards." (Tr. 680). While Plaintiff challenges the ALJ's assessment of her residual functional capacity (discussed further below) and decision on other bases, she concedes the ALJ's residual functional capacity assessment including her ability to walk for only four hours in an eight-hour workday is consistent with an ability to perform the full range of sedentary work. Plaintiff's Reply Brief at 3.

The matter does not need to be remanded to resolve the inconsistency between the ALJ's narrative discussion of Plaintiff's residual functional capacity and his specific findings related to Plaintiff's ability to stand or walk during an eight-hour workday. However, the issue should be reviewed and the matter should be remanded to allow the administration the opportunity to reconsider Plaintiff's residual functional capacity in light of the court's finding that the ALJ failed to properly evaluate the medical evidence regarding Plaintiff's mental and physical impairments, as discussed above.

On remand the administration should reevaluate the ALJ's use and reliance on Rule 201.21. Rule 201.21applies to a younger individual age 45-49, a high school graduate or more, with skilled or semiskilled previous work experience, but no transferable skills. 2 0 C.F.R. pt. 404, subpt. P., app. 2 § 201.21. On the date of the ALJ's decision, September 29, 2006, Ms. Richardson was one month shy of her 50th birthday. In such a situation, the ALJ should have considered whether because of her borderline age, Mrs. Richardson was disabled.

The Commissioner has indicated that he will:

> not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in your case.

20 C.F.R. § 404.1563(b). In Russell v. Bowen, 856 F.2d 81, 84 (9th Cir.1988), the Ninth Circuit recognized that the age categories should not be applied mechanically in a borderline situation, but found that Russell's case was not a borderline case because he was closer to age 59 to age 60 (59 years and 5 months old).

Finally, the court finds little discussion in the ALJ's opinion related to the significance of February 1, 2004 as the date of termination of Plaintiff's disability and point of medical

REPORT AND RECOMMENDATION - 12

improvement. Plaintiff's revision of her neck fusion surgery occurred on August 6, 2003, and the ALJ noted the medical expert testified, "that the claimant's neck would have healed within 6 months of the second surgery," (Tr. 29) which would chronologically indicate Plaintiff would have recovered from her surgery in February 2004. The ALJ also twice noted a cervical fluoroscopy report dated February 12, 2004, (Tr. 29, 33) to support his finding of medical improvement in February 2004. However, a review of this report does not significantly support the ALJ's finding. Dr. Dhanda found no evidence of a fracture, but also stated the study was similar to a study from August 12, 2003. Tr. 310. As discussed above the ALJ failed to properly consider the medical evidence related to Plaintiff's mental health. The ALJ also failed to properly assess the lay witness evidence (discussed below). The medical evidence related to Plaintiff's mental health and the lay witness statements supports Plaintiff's contention that she suffered from significant limitations after February 2004.

In sum, the ALJ has not meet his burden of showing Plaintiff's medical condition improved to the point that after February 1, 2004, she retained the ability to perform those jobs identified by the vocational expert. The ALJ failed to properly assess the medical evidence related to Plaintiff's mental health and consequently, the ALJ's residual functional capacity assessment was flawed. On remand the ALJ should reconsider step-five and if any finding of a date on which Plaintiff is found no longer disabled due to medical improvement, the ALJ should cite to specific evidence to support that finding.

*C.    The ALJ Failed To Properly Consider Lay Testimony Provided By Ms. Gullan*

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

concerning a claimant's ability to work." <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115(9th Cir. 2009); <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir.1996) (*citing* <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir.1993)).

In August 2005, Margaret Gullan, a volunteer with Sacred Heart Emergency Outreach, submitted a declaration regarding Plaintiff's observed limitations. Tr. 144-45. Ms. Gullan, prefaced her declaration, stating, "During the past two years I have seen Mary Ann Nye-Richardson at least once a week and sometimes two or three times a week for at least a couple of hours each time." Tr. 144. Ms. Gullan stated that Plaintiff is in constant pain, unable to drive due to the side effects of her pain medications (Oxycontin and Vicodin), and the medications affect her ability to concentrate and stay focused in conversations. Tr. 144.

The ALJ addressed Ms. Gullan's statement, stating the following:

> Before discussing the credibility of the claimant's statements, I first turn to the statement of the claimant's friend, Margaret Gullan, who reported in August of 2005 that the claimant was in constant pain, from what she had observed. She reported that the claimant had difficulty both sitting and being on her feet. Ms. Gullan opined that the claimant would not be able to do any kind of work for 8 hours per day because of her pain, the side effects of her medications, and her inability to sustain motions. Ex 11E/1.
>
> I have considered this opinion and agree that the claimant must limit her activities. This is reflected in my assessment of her residual functional capacity. And I agree that the evidence shows that, before February 1, 2004, the claimant was unable to sustain a full and competitive work schedule on a regular and continuing basis. I have given weight to this witness statement and have assessed a restrictive residual functional capacity, even after the date the claimant's disability ended, as discussed below. *But I do not find that the evidence establishes that the claimant has been unable to work since recovering from her second fusion, as discussed more thoroughly below*.

Tr. 32 (italics added).

REPORT AND RECOMMENDATION - 14

First, it appears from the above italicized comment that the ALJ may have erred and placed the burden on Plaintiff to prove she has been unable to work since recovering from her second surgery. As previously discussed, once the ALJ found Plaintiff was disabled and entitled to benefits prior to February 2004, the burden was on the ALJ to prove Plaintiff's condition had improved to the point that she was no longer disabled. With regard to Ms. Gullan's statements and observations, Plaintiff argues the reasons the ALJ gave in general for determining Ms. Richardson was not disabled after February 2004 are not sufficient to reject or limit Ms. Gullan's testimony to pre-February 2004. The undersigned agrees. The ALJ should reconsider the lay testimony after reconsidering the medical evidence.

## CONCLUSION

Based on the foregoing discussion, the Court should remand the matter to the administration for further consideration. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 12, 2009**, as noted in the caption.

DATED at this 20th day of May, 2009.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15